IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENISE ESPARZA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 3:17-CV-154-L-BK |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3* and 28 U.S.C. § 636(b)(1)(B)&(C), this case has been referred to the undersigned for a recommended disposition on the parties' cross-motions for summary judgment. For the reasons that follow, the Court recommends that Plaintiff's *Motion for Summary Judgment*, Doc. 14, be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 15, be **DENIED**, the decision of the Commissioner be **REVERSED**, and this case be **REMANDED** for further administrative proceedings.

## I. BACKGROUND

**A.**     <u>Procedural History</u>

Plaintiff seeks judicial review of the final decision of the Commissioner denying her claim for disability insurance benefits under the Social Security Act ("the Act"). In December 2012, Plaintiff filed for benefits, claiming that she became disabled in June 2012, due to right arm weakness, chronic right and left leg swelling, bipolar disorder, type II, and right side temporomandibular joint dysfunction. Doc. 11-15 at 2, 6. Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 11-3 at 2; Doc. 11-10 at 56-70.

B.    **Factual Background**

Plaintiff was 42 years old on her disability onset date, with a high school education, a nursing certification, and an associate degree. Doc. 11-10 at 61; Doc. 11-18 at 25, 27. She has past relevant work as a school nurse, licensed vocational nurse, home health care aide, and deliverer. Doc. 11-11 at 22-23.

Between November 2012 and May 2013, Plaintiff received mental health treatment from Texas Behavioral Systems PA, where she was diagnosed with a mood disorder NOS (not otherwise specified) and ADHD, prescribed medications, and assessed Global Assessment of Functions ("GAF") scores between 51 and 60. *See* Doc. 11-19 at 3-9. She resumed treatment at MHMR from March 2014 to August 2015, during which time she was diagnosed with bipolar disorder, generalized anxiety disorder and panic disorder without agoraphobia, prescribed medication, and assessed GAF scores between 45 and 65. *See* Doc. 11-23 at 85-86, 88-89, 91-95; Doc. 11-35 at 70.[1]

In April 2013, a consultative mental status examination of Plaintiff was performed by licensed clinical psychologist, Dr. Lawrence Sloan, Ph.D. *See* Doc. 11-18 at 25-30. Plaintiff's chief complaint was bipolar disorder and also noted were a history of depressive episodes, manic symptoms, and ADHD for which Plaintiff took various medications. Doc. 11-18 at 25-26. Regarding her activities of daily living, Plaintiff reported that she spends the day preparing dinner, doing laundry, reading, watching television, and spending time with her son. Doc. 11-18

---

[1] As cited in the ALJ's opinion, per the Diagnostic and Statistical Manual of Mental Disorders, a GAF score between 41 and 50 "denotes serious symptoms or any serious impairment in social, occupational or school functioning," a GAF score between 51 and 60 "denotes moderate symptoms or any moderate impairment in social, occupational or school functioning," and a GAF score between 61 at 70 "suggests some mild symptoms or some difficulty in social, occupational or school functioning." Doc. 11-10 at 63-64.

at 27. Dr. Sloan found Plaintiff's thought process was generally logical, sequential and coherent, her thought content was rational, goal directed and easy to follow, and her concentration was within normal limits. Doc. 11-18 at 28-29. Plaintiff's short- and long-term memory, judgment, and insight also were found to be intact. Doc. 11-18 at 28-29. Dr. Sloan diagnosed Plaintiff with bipolar II disorder, most recent episode depressed, provisionally diagnosed her with ADHD, and assessed a GAF score of 55. Doc. 11-18 at 29. Dr. Sloan found Plaintiff's prognosis guarded and concluded that, based on Plaintiff's "description of psychological symptoms combined with functioning in various areas," she "would have difficulty maintaining consistent employment from a mental health standpoint." Doc. 11-18 at 29.

In March and September 2013, state agency medical consultants determined that Plaintiff's affective disorder amounted to a severe mental impairment, but found that it resulted in only mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties as to concentration, persistence and pace. Doc. 11-12 at 8, 22.

In June 2015, MHMR psychiatrist, Dr. Shamji Badhiwala, M.D., completed a Mental Residual Functional Capacity ("RFC") Assessment, in which he noted as "fair" Plaintiff's ability to: (i) understand, remember, and carry out detailed instructions; (ii) maintain attention and concentration for extended periods; (iii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (iv) sustain an ordinary routine without special supervision; (v) work in coordination with or proximity to others without being distracted by them; (vi) make simple work-related decisions; and (vii) accept instructions and respond appropriately to criticism from supervisors. Doc. 11-27 at 21-24. Dr. Badhiwala further found "almost absent" Plaintiff's ability to (i) complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without

an unreasonable number and length of rest periods; (ii) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (iii) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (iv) respond appropriately to changes in the work setting. Doc. 11-27 at 21-24.

In July 2015, Plaintiff was referred to Dr. Daniel Cruz-Laureano, PsyD., for a neuropsychological evaluation following a history of reported memory loss. *See* Doc. 11-29 at 29-36. After conducting an examination, Dr. Cruz-Laureano found that Plaintiff suffered from "diffuse cognitive deficits characterized by memory difficulties, impaired language skills, and decreased cognitive processing speed." Doc. 11-29 at 33. The doctor further opined that Plaintiff's depression/anxiety were potentially hindering her cognitive efficiency, but noted that medication side effects could also be a contributing factor. Doc. 11-29 at 33-34. Dr. Cruz-Laureano recommended that Plaintiff continue receiving psychotherapy and psychiatric treatment for her affective distress. Doc. 11-29 at 36.

C.     **The ALJ's Findings**

In August 2015, the ALJ denied Plaintiff's application for benefits. The ALJ determined that Plaintiff had several severe mental impairments, including: anxiety disorder, affective disorder, ADHD, and medication-induced cognitive dysfunction. Doc. 11-10 at 58-59. As relevant here, the ALJ found that Plaintiff retained the mental ability to (i) understand, remember, and carry out one- or two-step instructions; (ii) sustain attention and concentration for simple tasks requiring little independent judgment and minimal variations; (iii) perform work where interpersonal contact is only incidental[2] to the work performed; and (iv) understand,

---

[2] The ALJ defined the term "incidental" to mean that "the individual will be working in proximity to others, but the accomplishment of her tasks is not dependent on a close working relationship with the people around her." Doc. 11-10 at 60 n.1.

remember, and carry out simple instructions, and respond appropriately to supervisors and coworkers in usual work situations and changes in a routine work setting on a sustained basis. Doc. 11-10 at 60. The ALJ concluded that while Plaintiff could not return to her past work, she could perform other work in the national economy and, thus, was not disabled. Doc. 11-10 at 68-70.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (i) an individual who is working and engaging in substantial gainful activity is not disabled; (ii) an individual who does not have a "severe impairment" is not disabled; (iii) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (iv) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (v) if an individual's impairment precludes him from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden

shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court relied upon their citation to the supporting evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

# III. ARGUMENT & ANALYSIS

Plaintiff argues that the Commissioner's determination of no disability should be reversed because the ALJ (i) improperly relied on the vocational expert's testimony, and (ii) failed to properly consider Dr. Badhiwala's June 2015, October 2015, and January 2016 medical source statements. Doc. 14 at 16-26. Because the Court concludes that remand is required solely on the ground of error raised in Issue 2, Plaintiff's remaining argument is not addressed. Nevertheless, Plaintiff is not precluded from raising that issue on remand. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

Regarding Issue 2, Plaintiff argues that the ALJ erred by failing to (i) "discover, discuss, or weigh" Dr. Badhiwala's October 2015 and January 2016 medical source statements, *see* Doc. 11-35 at 71-74, and (ii) discuss the factors outlined in 20 C.F.R. § 404.1527(c) ("the Section 1527 factors") prior to according Dr. Badhiwala's June 2015 statement less-than-controlling weight. Doc. 14 at 23-26. In response, Defendant contends, *inter alia*, that the October 2015 and January 2016 statements are irrelevant as they were given after the date of the ALJ's decision, and that the ALJ properly applied the Section 1527 factors. Doc. 16 at 12-16. In reply, Plaintiff argues for the first time that the Appeals Council erred in failing to "mention, consider, or weight [sic]" Dr. Badhiwala's October 2015 and January 2016 statements.[3] Doc. 17 at 6-9.

As an initial matter, Plaintiff's argument concerning the October 2015 and January 2016 statements lacks merit. As Defendant points out, the ALJ rendered his decision on August 7, 2015; thus it was impossible for the ALJ to discover, discuss, or weigh the subsequently-issued

---

[3] Because this argument was raised for the first time in Plaintiff's reply brief, the Court will not consider it. *See United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived.").

October 2015 and January 2016 statements. *See* Doc. 11-10 at 70; *see Spence v. Barnhart*, 159 F. App'x 593, 596 (5th Cir. 2005) (per curiam) ("The ALJ cannot consider nonexistent evidence[.]"). However, the Court finds Plaintiff's argument concerning Dr. Badhiwala's June 2015 statement well-taken.

A treating physician's opinion about the nature and severity of a claimant's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (quotation omitted). However, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quotation omitted). In particular, the ALJ may give little or no weight to a treating physician's opinion so long as the ALJ provides good cause for doing so. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (per curiam). Good cause exists when a treating source's opinion is conclusory, unsupported by medically acceptable evidence, or lacks substantial support. *Id.* (quotation omitted).

If, however, there is no "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in" 20 C.F.R. § 1527(c). *Newton*, 209 F.3d at 453 (emphasis in original). Under that rubric, before the ALJ may reject a treating physician's opinion, he or she must consider six factors: (1) the physician's length of treatment; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support for the physician's opinion afforded by the medical evidence of record; (5) the consistency of the

8

opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.* at 456.

The portion of the ALJ's decision mentioning Dr. Badhiwala and his June 2015 opinion reads as follows:

> [A]ttending MHMR psychiatrist Shamji Badhiwala, MD, completed a medical source statement in June of 2015, ten months after he last examined the claimant (Exhibit 53F).
>
> Dr. Badhiwala opined the claimant had a "good" ability to understand, remember and carry out very short and simple instructions; however, he opined the claimant had a "poor" ability to interact appropriately with coworkers, respond appropriately to changes in work setting, and complete a normal workday/workweek without interruption from psychologically-based symptoms (Exhibit 53F). If adopted, these mental limitations would result in a finding of disability; however, the undersigned accords very limited weight to the opinion of Dr. Badhiwala, and does not adopt the functional mental limitations imposed by him. The limitations imposed are unsupported by Dr. Badhiwala's own progress notes, by the claimant's unimpaired activities of daily living, and by the global assessment of functioning (GAF) scores of 55 to 65 repeatedly assigned by Dr. Badhiwala (Exhibit 30F). In accordance with the Diagnostic and Statistical Manual of Mental Disorders, GAF scores in this range denote mild to moderate symptoms and/or mild to moderate impairment in social, occupational or school functioning, but do not substantiate poor ability to interact with others, poor ability to adapt to routine changes, or poor ability to complete a normal workday without interruption from psychologically based symptoms.

Doc. 11-10 at 67. As for controverting evidence from a treating or examining physician, the ALJ cites none in rejecting Dr. Badhiwala's opinion, and Defendant does not contend that any exists. While the ALJ references the fact that Dr. Badhiwala's opinion was internally inconsistent, "inconsistencies within the records of the same treating physician do not fall within the competing first-hand medical evidence exception recognized in *Newton*." *Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL 5458925, at *9 (N.D. Tex. Sept. 17, 2015) (Solis, J.) (quotation omitted). In fact, Dr. Badhiwala was the only treating physician that opined on Plaintiff's mental work-related limitations. Accordingly, the ALJ was required to perform a detailed analysis of

9

the Section 1527 factors prior to affording Dr. Badhiwala's June 2015 opinion less-than-controlling weight.

That notwithstanding, the ALJ "need not recite each factor as a litany in every case," provided that he or she applies the factors and articulates good reasons for the weight assigned to the treating source. See Hawkins v. Astrue, No. 09-CV-2094-BD, 2011 WL 1107205, at *6 (N.D. Tex. Mar. 25, 2011) (Kaplan, J.) (citations omitted). Thus, in determining whether the Section 1527 factors have been properly addressed, courts generally engage in a substantive evaluation of the ALJ's analysis. See Coljohn v. Berryhill, No. 16-CV-1208-K, 2017 WL 2455962, at *6 (N.D. Tex. May 16, 2017) (Toliver, J.) (collecting cases), adopted by 2017 WL 2462648 (N.D. Tex. June 6, 2017) (Kinkeade, J.). Undertaking such an evaluation here, the Court cannot conclude that the ALJ properly applied each factor.

Regarding factors one, two, and three (taken in the order outlined above), the ALJ noted the time that elapsed between Dr. Badhiwala's last examination of Plaintiff and the date he issued his June 2015 opinion and cited to the portion of the record containing Dr. Badhiwala's treatment notes. Doc. 11-10 at 67. Lacking, however, is any discussion of Plaintiff's treatment history with Dr. Badhiwala, i.e., the length of their treatment relationship, the frequency of Plaintiff's visits, or the nature and extent of their treatment relationship. See Wilkerson v. Berryhill, No. 16-CV-851-BN, 2017 WL 1091601, at *4 (N.D. Tex. Mar. 23, 2017) (Horan, J.) (finding that the ALJ failed to consider factors one, two, and three where he failed to discuss the dates of the claimant's first and last examinations with the physician or how often the clamant received treatment from the physician); cf. Jeffcoat v. Astrue, No. 08-CV-0672-A, 2010 WL 1685825, at *3 (N.D. Tex. Apr. 23, 2010) (McBryde, J.) (finding that the ALJ properly considered factors one, two, and three where he noted the frequency of the claimant's visits, the

10

length of the treatment relationship, and the type of treatment the claimant received); *Nevarez v. Colvin*, No. M-15-313, 2016 WL 3636260, at *5 (S.D. Tex. May 2, 2016) (finding that the ALJ properly considered factors one, two, and three where he "explain[ed] with clarity the dates of [the claimant's] ongoing counseling with [her treating physician], the nature and goals of the therapy . . . , and describe[d] some of the contents of [her treating physician's] progress notes"). There is no evidence that the ALJ applied these factors before affording Dr. Badhiwala's opinion less-than-controlling weight.

Regarding factors four, five, and six, the ALJ recognized Dr. Badhiwala's psychiatry specialization and discussed how Dr. Badhiwala's opinion conflicted with the doctor's own progress notes, Plaintiff's unimpaired activities of daily living, and the GAF scores between 55 and 65 that Plaintiff was "repeatedly assigned by Dr. Badhiwala." Doc. 11-10 at 67. However, contrary to the ALJ's assertion, there is no evidence that Dr. Badhiwala ever assigned Plaintiff GAF scores between 55 and 65. The exhibit cited by the ALJ shows only that Licensed Counselor Kimberly Milliken assigned a GAF score of 60 on March 3, 2014, *see* Doc. 11-23 at 85, 96, and Dr. Allen Hueston, M.D., assigned a GAF score of 65 on April 2, 2014, *see* Doc. 11-23 at 94-95.

Additionally, it does not appear that the ALJ properly considered the extent to which Dr. Badhiwala's opinion was consistent with the evidence *as a whole*. For instance, the ALJ did not mention that Dr. Badhiwala assessed GAF scores of 50 on three occasions. See Doc. 11-23 at 86 (Aug. 2014), 88 (June 2014), 89 (Apr. 2014).[4] As stated by the ALJ, a GAF score in this range denotes serious symptoms or serious impairments in social, occupational or school functioning. Doc. 11-10 at 63-64.

---

[4] The ALJ's decision only mentions the April 2014 GAF score. *See* Doc. 11-10 at 63-64.

Dr. Badhiwala's June 2015 opinion is also consistent with the findings of Dr. Sloan, who noted that Plaintiff "would have difficulty maintaining consistent employment from a mental health standpoint," and Dr. Cruz-Laureano, who opined that Plaintiff suffered from "diffuse cognitive deficits" that he attributed (at least partly) to her depression and anxiety. Doc. 11-18 at 29; Doc. 11-29 at 33. While the ALJ mentions and rejects these opinions at various points in his decision, he does not appear to consider the extent to which they actually were consistent with Dr. Badhiwala's June 2015 opinion. Thus, it is unclear that the ALJ considered the consistency of Dr. Badhiwala's June 2015 opinion with the record as a whole. *See Boles v. Colvin*, No. 15-CV-0049-C-BL, 2016 WL 4257441, at \*9 (N.D. Tex. May 27, 2016) (Frost, J.) (finding that the ALJ failed to consider the consistency of two treating physicians' medical opinions with the record as a whole where he rejected them without considering the extent they were consistent or inconsistent), *adopted by* 2016 WL 4257467 (N.D. Tex. Aug. 11, 2016) (Cummings, J.).

In sum, the ALJ's conclusory assertion at the outset of his analysis that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527" is not reflected in the substance of that analysis. Doc. 11-10 at 61; *see Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) ("[I]t should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion."). While the ALJ discusses some facts that might indicate consideration of the factors, "it is not clear from the ALJ's opinion whether [he] truly considered them as part of the 'detailed analysis' that Section 404.1527(c) requires." *Osborn v. Berryhill*, No. 16-CV-44-B, 2017 WL 2312910, at \*5 (N.D. Tex. May 11, 2017) (Horan, J.), *adopted by* 2017 WL 2306581 (N.D. Tex. May 26, 2017) (Boyle, J.); *cf. Jeffcoat*, 2010 WL 1685825, at \*3 (finding that the ALJ applied

12

the Section 1527 factors where "his discussion of [the treating physician's] opinion show[ed] that he considered each [factor] in reaching his decision to reject [the treating physician's] opinion").

Given the ambiguity in the ALJ's analysis, the Court cannot infer that each factor was actually considered, as the "adequacy of the [Section 1527] determination must rise and fall based on the ALJ's decision and reasoning." *Stancle v. Colvin*, No. 15-CV-0405-CAN, 2016 WL 3172784, at *12 (E.D. Tex. June 7, 2016); *see also Prudhomme v. Colvin*, 605 F. App'x 250, 254 (5th Cir. 2015) (per curiam) (noting that courts "may affirm only on the grounds that the Commissioner stated for [in the] decision") (quoting *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014)).

The Court's analysis does not end there, as reversal and remand is not warranted by the mere fact that the ALJ erred procedurally. Instead, "[r]emand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Ware v. Colvin*, No. 11-CV-1133-P, 2013 WL 3829472, at *4 (N.D. Tex. July 24, 2013) (Solis, J.) (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)). On the record before the Court, the ALJ's failure to properly consider the Section 1527 factors is not harmless. Because Dr. Badhiwala was the only treating physician that assessed Plaintiff's mental work-related limitations, there is a realistic possibility that the ALJ would have reached a different conclusion had he properly considered and applied the Section 1527 factors. *Id.* Accordingly, remand is required. *See Coljohn*, 2017 WL 2455962, at *8 (reversing and remanding where the ALJ failed to properly apply the Section 1527 factors before rejecting the opinions of the claimant's treating/examining physicians).

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 14, be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 15, be **DENIED**, the decision of the Commissioner be **REVERSED**, and this case be **REMANDED** for further administrative proceedings.

**SO RECOMMENDED** on November 27, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE